UNITED STATES *v.* NEUSTADTL (No. 1266).[1]

1. SUFFICIENCY OF PROTEST.

The only question sought to be raised by the protest was the correctness of the gauger's report on the quantity of beer, and this question was sufficiently indicated.

2. GAUGE OF BEER.

The gauger made no return of actual measurement, but simply a return of the branded capacity of the casks. In doing this he divided the shipments into two lots, corresponding in the number of casks to those named on the invoice and entry, and so entered the two lots as to increase the apparent branded capacity of one and to decrease the other. A computation shows the board reached a result entirely equitable.

United States Court of Customs Appeals, May 18, 1914.

APPEAL from Board of United States General Appraisers, Abstract 32853 (T. D. 33591). [Affirmed.]

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.

*Benno Loewy* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

This is an appeal from a decision of the Board of General Appraisers directing reliquidation of an entry of beer. The facts as disclosed by

---

[1] Reported in T. D. 34470 (26 Treas. Dec., 847).

the entry and bill of lading are these: There was shipped by the steamship *President Grant* on the 14th of March, 1912, to the appellee, from Hamburg, a quantity of beer, which beer was covered by two invoices, one covering 330 half barrels of beer and 30 quarter barrels, making a total of 360 casks, containing 20,554 liters, the other invoice covering 130 half barrels, containing 7,799 liters. The entry followed these invoices, naming the two lots, 360 barrels of beer containing 20,554 liters, and 130 barrels, containing 7,799 liters.

The gauger made return as follows:

| Numbers found on— | Capacity, branded liters. |
|---|---|
| 360 barrels beer | 21,786 |
| 130 barrels beer | 6,837 |

making a total of 28,623 liters, and the course pursued in liquidation was to reduce the separate items to gallons and fix duty upon the quantity supposed to be contained in the 360 barrels on the basis of branded capacity and upon the 130 barrels on the basis of the invoice figures. There is nothing other than the papers to indicate whether the beer as stored under the water line of the vessel was there separated into lots or commingled.

The importer protested the assessment as made, claiming that the goods were liable only to a duty on 7,566 gallons and not that returned by the gauger. It is to be noted that the gauger made no return of actual measurement, but simply a return of the branded capacity of the casks.

The protest was sustained and a reliquidation directed on the basis of a correct computation of the number of gallons contained in the entire shipment as shown by the branded capacity returned by the gauger, which is an increase of 270 liters over the amount stated in the entry.

The Government appeals and two points are raised—first, that the board erred in not holding that the protests were insufficient, and, secondly, in holding that the dutiable quantity was but $7,561\frac{1}{3}$ gallons.

As to the first contention it does not appear that any objection was raised to the protest at the hearing. But assuming the question to be open here, we think the protest was sufficient to raise the question litigated below. The protest was in substance as follows:

We hereby protest against the payment of additional duty of $57.50 charged erroneously on * * * 490 casks beer imported by Victor Neustadtl (Inc.), s/s *President Grant*, Mar. 25, 1912. Entry No. 85646. * * * Claiming that under existing laws said goods are only liable to a duty of 7,566 gals. and not that of gauger's return.

It is obvious that there was no attempt to raise any other question than that the quantity of goods was incorrectly reported by the gauger, and the gauger's return of gallons dutiable was, in so far as

it exceeds 7,566 gallons, excessive, and this question was sufficiently indicated by the protest.

A Treasury regulation promulgated August 2, 1909, and known as T. D. 29929, provides that—

On and after August 15, 1909, duties will be assessed on beer imported in barrels or casks on the basis of the invoice quantity whenever the same is equal to or exceeds the capacity branded on the barrels in liters. Fractions of a liter will not be considered. * * *

If the total invoice quantity is found to be less than the total branded capacity of all the barrels or casks covered by the invoice, the entry will be liquidated upon the quantity shown by the branded capacity.

The contention of the Government is that this regulation treats each separate invoice as a unit, and that where goods are shipped under separate invoices in the same vessel, for the purposes of applying this regulation the goods should be separated into lots designated by the several invoices.

Assuming that this is the correct interpretation of the regulation, it would follow that if the lots covered by each invoice were so separately gauged, there is nothing to impeach the gauger's finding. We do not decide whether, under such circumstances as are here shown, the gauger should have so segregated the two lots and ascertained the quantity. It is apparent that there are difficulties growing out of the practice of the customhouse in the way of his doing so where, as in this case, goods covered by the two separate invoices are commingled, as neither the invoices nor the list of numbers go to the gauger.

But assuming that he should in some way, and as best he may, make such separation in gauging, we now have ample evidence that this was not successfully accomplished in this case. When the case was first submitted the gauger's report was all we had before us to show the character of his work, and as that report did not show the numbers on the casks, there was apparently no means of showing that the particular 360 barrels which showed a greater branded capacity than the entered quantity were those so designated in the entry and in the invoice. But since the hearing of the case the dock books of the gauger have been produced and are now before us, and from these it appears that the gauger did divide the shipments into two lots corresponding in the *number* of casks to those named on the invoice and entry, and it also appears that while the 360-cask lot contained, according to the invoice, 30 quarter barrels, the gauger entered in this lot nothing but half barrels, thus increasing the apparent branded capacity of this lot, while he listed in the 130-cask shipment the entire 30 quarter barrels which belonged in the larger shipment, thus decreasing the apparent branded capacity of this lot correspondingly. A computation of the quantities shown by the branded capacity of the 30 quarter-barrel barrels shows the

amount to be substantially 797 liters. Taking the average capacity of the half-barrel casks as 60 liters, a discrepancy of more than 1,000 liters is accounted for, which, if deducted from the branded liters found by the gauger in the 160 casks which he listed as belonging to the larger lot, leaves a discrepancy in that lot of slightly less than that allowed by the Board of General Appraisers as an addition to the entered quantity. It will be seen from this that the board reached a result entirely equitable to the Government.

It is stated in the brief of Government that this importation is one of those included in the case of Hollender v. United States (4 Ct. Cust. Appls., 406; T. D. 33850), and it is claimed that the legal basis of assessment has been completely adjudicated. There is nothing in this record, however, which shows the identity of the issues in the two cases, nor do we think that any legal principle was declared in Hollender v. United States which is opposed to the conclusion above stated.

The decision of the Board of General Appraisers is *affirmed*.